**JS-6**
**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TAMI DAVIS, | CASE NO. ED CV 11-00367 ODW (OPx) |
| Plaintiff, | |
| vs. | Order **GRANTING** Defendant's Motion for Summary Judgment [14] [Filed 10/24/11] |
| VITAMIN WORLD, INC.; CAROL YATES; and DOES 1-100, inclusive, | |
| Defendants. | |

## I.   INTRODUCTION

Pending before the Court is Defendant, Vitamin World, Inc.'s ("Defendant," "Vitamin World," or the "Company"), Motion for Summary Judgment or, in the Alterative for Partial Summary Judgment.[1] (Dkt. No. 14.) Plaintiff, Tami Davis ("Plaintiff"), filed an Opposition on November 1, 2011, (Dkt. No. 17), to which Defendant filed a Reply on November 7, 2011, (Dkt. No. 19). After careful consideration of the parties' presentations at oral argument along with the briefing and evidence

---

[1] Plaintiff voluntarily dismissed Defendant Carol Yates ("Yates") from this action on February 4, 2011, purportedly after Plaintiff was informed that the defamation claim against Yates was barred by the applicable statute of limitations. (Mot. at 1.)

submitted in support of and in opposition to the instant Motion, for the reasons discussed below, Defendant's Motion is **GRANTED**.

## II.   UNDISPUTED FACTS

After reviewing the parties' submissions, the Court finds the following facts to be undisputed. Vitamin World sells vitamins and nutritional supplements in retail stores throughout the United States. (SUF No. 1.)[2] Vitamin World's Employee Handbook contains a policy that provides employees with the right to take up to twelve weeks of leave pursuant to the Family Medical Leave Act ("FMLA"), during which employees receive continued health benefits and are guaranteed reinstatement ("FMLA Leave"). (SUF No. 2.) Additionally, Vitamin World's Employee Handbook contains a Disability Leave policy that provides employees with the right to take up to fourteen weeks of additional leave after their FMLA Leave has been exhausted ("Extended Disability Leave"). (SUF No. 3.) While an employee is out on Extended Disability Leave, the Company continues to provide employees with health benefits. (*Id.*) Unlike FMLA Leave, however, Vitamin World's Extended Disability Leave policy expressly states that "the Company may not be able to protect an Associate's position when they are out on [Extended] [D]isability [L]eave," (*i.e.*, the Company cannot guarantee reinstatement to an employee on an Extended Disability Leave). (SUF No. 4; Davis Depo., Exh. 18 at 42.) Thus, in total, an employee may take up to twenty-six weeks of leave, comprised of twelve weeks of FMLA Leave and an additional fourteen weeks of Extended Disability Leave. (SUF Nos. 2, 3.)

Plaintiff maintained two separate periods of employment with Vitamin World. (SUF No. 5.) Initially, Plaintiff was hired as a Sales Associate on March 16, 2001 in Vitamin World's Lake Elsinore store. She was subsequently promoted to Assistant Manager and worked in that capacity in both the Redondo Beach and Torrance stores. (SUF No. 6.) During her first period of employment, Plaintiff took a ten-week leave of

---

[2] The Court refers to Defendant's Separate Statement of Uncontroverted Facts ("SUF"), (Dkt. No. 14-2), and Plaintiff's corresponding response, (Dkt. No. 17-2). Additionally, Plaintiff submitted a Statement of Additional Material Facts ("SAMF"), (Dkt. No. 17-3), and a Statement of Genuine Issues ("SGI") (Dkt. No. 17-4).

absence from March 23, 2003 to June 2, 2003 as a result of emergency abdominal surgery. (SUF No. 7.) Vitamin World approved the leave and categorized it as FMLA Leave. (SUF No. 8.) Between August 14, 2003 and October 2003, Plaintiff took a second leave of absence for seven weeks due to an emergency hysterectomy. (SUF No. 9.) Vitamin World approved the leave, and categorized the first two weeks as FMLA Leave, and the remaining five weeks as Extended Disability Leave. (SUF No. 10.) While on Extended Disability Leave, Vitamin World sent Plaintiff a letter dated August 29, 2003, in which Vitamin World indicated, consistent with its company policy, that it could not guarantee Plaintiff reinstatement when she returned from Extended Disability Leave. (SUF No. 11.) Subsequently, Plaintiff's physician wrote a letter authorizing Plaintiff to return to work effective October 6, 2003. (SUF No. 12.) At that time, the most recent position Plaintiff held, Assistant Manager of the Torrance store, had not yet been filled. (SUF No. 13.) Consequently, on October 5, 2003, Vitamin World reinstated Plaintiff to her position as Assistant Manager. (*Id.*) Thereafter, on July 6, 2004, Plaintiff resigned because she was having "personal issues" and was "moving." (SUF No. 14.

Plaintiff's second period of employment with Vitamin World began on September 8, 2005, when she was hired as Store Manager at Vitamin World's Escondido store. (SUF No. 15.) During this term of employment, Plaintiff managed other stores within her district, including those in Lake Elsinore, Cabazon, and Temecula. (SUF No. 16.) Plaintiff's last position with Vitamin World was Store Manager of the Temecula store. (SAMF No. 1.) In this position, Plaintiff reported directly to Carol Yates, the District Manager, who evaluated Plaintiff's performance and issued positive evaluations regarding Plaintiff's performance in both 2006 and 2007. (SUF Nos. 17, 18.) Between January 16, 2008 and April 14, 2008, Plaintiff took a twelve-week leave of absence due to kidney problems, which was approved by Vitamin World and categorized as FMLA Leave. (SUF No. 19; SAMF No. 2.) Subsequently, between May 29, 2008 and June 9, 2008, Plaintiff took a two-week leave of absence due to further kidney problems, which was approved by Vitamin World and categorized as Extended Disability Leave. (SUF Nos. 20, 21.) Plaintiff returned to work on June 10, 2008. (SUF Nos. 20, 49.) On June

25, 2008, after Plaintiff left work for the day, Vitamin World received a doctor's note stating that Plaintiff would need additional leave from June 25, 2008 through July 10, 2008. (SUF No. 23.) Vitamin World approved this leave of absence as Extended Disability Leave. (SUF No. 24.) Plaintiff did not return to work at the conclusion of this leave of absence. Indeed, Plaintiff's last day of work with Vitamin World was June 25, 2008. (SUF No. 22.) Defendant alleges, and Plaintiff does not dispute, that Plaintiff did not contact Vitamin World again until October 7, 2008, when Vitamin World received another doctor's note, indicating that Plaintiff would need a leave of absence until December 1, 2008. (SUF No. 27.) Thereafter, on December 12, 2008, Vitamin World received another doctor's note, indicating that Plaintiff would not return to work until December 17, 2008. (SUF No. 29.)

On December 12, 2008, Plaintiff contacted J.R. Whitaker ("Whitaker"), the District Manager who had replaced Carol Yates in October 2008. (SUF No. 30.) While the parties dispute whether Whitaker stated that Vitamin World did not have any vacancies for Store Manager, Assistant Store Manager, or Sales Associate positions, it is undisputed that Whitaker told Plaintiff there was "nowhere to place" her. (SUF No. 30; SAMF No. 5.) Further, while Plaintiff claims that Vitamin World was advertising her former position on www.monster.com, during her conversation with Whitaker, she was informed that the position had already been filled. (SUF No. 33, 34.) Indeed, prior to receiving the October 7, 2008 correspondence, on August 5, 2008, Vitamin World promoted a Sales Associate, Matthew Karoly, to Plaintiff's former position as Store Manager at the Temecula store. (SUF No. 25.)

Thereafter, on December 17, 2008, Plaintiff was informed by Lawrence Blum ("Blum"), the Director of Human Resources, that Vitamin World did not have any available positions. (SUF No. 35.) Plaintiff's employment with Vitamin World was then terminated, yet she remained eligible for re-hire. (*Id.*) In the context of her deposition, Plaintiff admitted that neither Whitaker nor Blum said anything leading her to believe they were "discriminating" against her. (SUF No. 37.) While Plaintiff contends that Yates demonstrated a discriminatory motive, it is undisputed that Yates did not directly

4

1  participate in the decision to terminate Plaintiff's employment because at the time
2  Plaintiff's employment was terminated, Yates was no longer employed by Vitamin
3  World. (SUF No. 37; SAMF No. 4.) Furthermore, Plaintiff admits that she does not
4  know if Yates did anything to affect her job. (SUF No. 41, 42.)

5        Although Plaintiff was eligible for re-hire and states that she saw advertisements
6  for positions at Vitamin World, there is no evidence, other than Plaintiff's deposition
7  testimony, that Plaintiff applied for any such position. (SUF Nos. 44, 81; SAMF Nos.
8  10, 11, 13-16.) Indeed, Plaintiff concedes that she "never followed up in writing[.]"
9  (SUF. No. 81.) Plaintiff subsequently held a position selling promotions at the Home
10 Depot, which she retained for only one day because the "job was in Corona, far from
11 Plaintiff's home" and Plaintiff had purportedly "learned from girls who had worked that
12 job previously that the company had not paid them." (SUF No. 86; SAMF No. 18.)
13 Plaintiff concluded that the position at Home Depot "was not going to work." (*Id.*)
14 Currently, Plaintiff concedes that she is both physically and mentally able to work. (SUF
15 No. 87.) Despite Plaintiff's "diligent" efforts to seek employment, however, she is
16 currently unemployed. (SUF No. 87; SAMF No. 19.)

17       As a result of the foregoing events, on December 16, 2010, Plaintiff filed a
18 Complaint in the Riverside County Superior Court against Defendants, alleging the
19 following claims: (1) unlawful discrimination in violation of California's Fair
20 Employment and Housing Act ("FEHA"); (2) failure to accommodate in violation of
21 FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4)
22 wrongful termination in violation of public policy; and (5) defamation. (Dkt. No. 1.) On
23 March 3, 2011, Defendant removed this action to federal court invoking diversity
24 jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.*) As of September 2011 and until the
25 instant Motion had been fully briefed, Plaintiff's counsel had lost contact with Plaintiff.
26 (SAMF No. 21.) Defendant now brings the instant Motion for Summary Judgment, or
27 in the Alterative for Partial Summary Judgment, as to each of Plaintiff's claims.
28                       **III.   LEGAL STANDARD**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (stating that the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Moreover, it is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

When ruling on a motion for summary judgment, the Court may consider evidence including the pleadings, discovery and disclosure materials, and any affidavits on file.

Fed. R. Civ. P. 56(c)(2). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## IV.   DISCUSSION

Defendant brings the instant Motion seeking summary judgment or, in the alternative, partial summary judgment as to Plaintiff's claims for discrimination in violation of FEHA, failure to accommodate in violation of FEHA, failure to engage in the interactive process in violation of FEHA, and wrongful termination in violation of public policy. The Court addresses each seriatim.

### A.   PLAINTIFF'S CLAIM FOR DISCRIMINATION

Under FEHA, it is unlawful for any employer, because of "physical disability, mental disability, [or] medical condition . . . to bar or to discharge [a] person from employment . . . or to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment." Cal. Gov. Code § 12940(a), *amended by* Cal. Legis. Serv. Ch. 261 (S.B. 559) (2011). Thus, " FEHA prohibits discrimination against any person with a disability but, like the ADA, . . . allows [an] employer to discharge an employee with a physical disability when that employee is unable to perform the essential duties of the job even with reasonable accommodation." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Green v. California*, 42 Cal. 4th 254, 257 (2007)). "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment" because "such claims must usually be proved circumstantially." *Lucent Techs., Inc.*, 642 F.3d at 745 (quoting *Guz v. Bechtel Nat, Inc.*, 24 Cal. 4th 317, 354 (2000)). Generally, "the plaintiff [has] an initial burden of establishing a prima facie case of discrimination." *Id.* (quoting *Godwin v. Hunt Wesson,*

*Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Id.* (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (Ct. App. 1999)). Hence, "[t]o prevail on summary judgment,[the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Id.* (quoting *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1247(Ct. App. 2008)).

To establish a prima facie case of disability discrimination under FEHA, Plaintiff must show that she "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations[;] and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Wills v. Super. Ct.*, 195 Cal. App. 4th 143, 159-60 (Ct. App. 2011) (quoting *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (Ct. App. 2010)). Defendant only advances arguments related to the first and third elements. Consequently, the Court finds that the second element – whether Plaintiff could perform the essential duties of the job with or without reasonable accommodations – is undisputed.

As to the first element, the parties dispute whether Plaintiff suffered from a disability. On one hand, Defendant contends Plaintiff did not suffer from a disability because at the time of her termination on December 17, 2008, her medical records indicate that she was capable of working. (Mot. at 10-11.) On the other hand, Plaintiff asserts at the time she was on medical leave, she was disabled under FEHA, and that even after she was cleared to worked, she still qualified as a disabled person because she suffered previously. (Opp'n at 11.) The Court agrees with Plaintiff.

Under FEHA, a physical disability includes:

> any physiological disease, disorder, [or] condition . . . that does both of the following: [a]ffects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive,

> digestive, genitourinary, hemic and lymphatic, skin, and endocrine[; and] [l]imits a major life activity."

Cal. Gov. Code § 12926(l)(1)(A)-(B) (2005), *amended by* Cal. Legis. Serv. Ch. 261 (S.B. 559) (2011). Additionally, a physical disability includes:

> [h]aving a record or history of a disease, disorder, [or] condition . . . described in paragraph (1) or (2), which is known to the employer or other entity covered by this part[;] . . . [b]eing regarded or treated by the employer or other entity covered by this part as having, or having had, any physical condition that makes achievement of a major life activity difficult[;] . . . [or] [b]eing regarded or treated by the employer or other entity covered by this part as having, or having had, a disease, disorder, [or] condition. . . that has no present disabling effect but may become a physical disability as described in paragraph (1) or (2).

Cal. Gov. Code §§ 12926(l)(3)-(5) (2005) (amended 2011). Here, Plaintiff's kidney condition undoubtedly affected her genitourinary and endocrine systems from March 23, 2003, when she took her first leave of absence until at least December 17, 2008, when she was last cleared to work. (*See* SUF Nos. 7, 29.) Further, it is undisputed that, during this time period, her condition affected a major life activity – working. *See* Cal. Gov. Code § 12926(l)(1)(B)(iii) (2005) (amended 2011) ("'Major life activities' shall be broadly construed and shall include . . . working."). While Vitamin World argues that Plaintiff was no longer disabled as of December 17, 2008, when her employment was terminated, its argument in this respect in unavailing. Vitamin World ignores California Government Code sections 12926(l)(3)-(5), which state, *inter alia*, that a physical disability includes "[h]aving a record or history of a disease, disorder, [or] condition . . . described in paragraph (1) or (2), which is known to the employer . . . ." Given that Vitamin World routinely approved Plaintiff's leaves of absence during a five-year time period, it is undisputed that Vitamin World was aware of Plaintiff's record and history. Consequently, even if Plaintiff had no "present disabling effect" at the time of her termination, Vitamin World's knowledge of her medical history is sufficient to qualify her as "disabled" under FEHA.

Plaintiff, however, fails to establish the third element of her prima facie case – that she "was subjected to an adverse employment action *because of* the disability or perceived disability." *Wills*, 195 Cal. App. 4th at 159-60 (emphasis added). Specifically,

9

Plaintiff fails to provide any evidence that the decision to terminate her employment was based on her disability or her record or history of a disability, or that Defendant was concerned Plaintiff would suffer from a disability in the future. Indeed, Plaintiff concedes that the individuals responsible for the decision to terminate her employment, Whitaker and Blum, never said anything that would lead her to believe they were "discriminating" against her. (SUF No. 37.) To the extent Plaintiff argues that Yates, her former supervisor, harbored discriminatory animus toward her, Plaintiff fails to establish the requisite causal connection between Yates's alleged animus and the decision to terminate her employment. It is undisputed that Yates was no longer employed at Vitamin World when Plaintiff's employment was terminated. (SUF Nos. 41, 42.) Furthermore, Plaintiff admits that she is unsure whether Yates affected her employment. (*Id.*) Such speculative assertions are simply insufficient to establish the third element. *See Thornhill Publ'g Co.*, 594 F.2d at 738. Accordingly, the Court finds that Defendant has sufficiently shown an absence of evidence to support the third element.[3]

Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. at 323-24. Here, Plaintiff fails to identify any *specific facts* tying her employment termination to her disability. Accordingly, Plaintiff fails to establish a prima facie case of disability discrimination, and summary judgment is hereby **GRANTED** as to this claim.

### B. PLAINTIFF'S CLAIM FOR FAILURE TO ACCOMMODATE

---

[3] To the extent Plaintiff argues that Defendant fails to provide evidence supporting its contention that there were no available positions for which Plaintiff was qualified, Plaintiff misconstrues the applicable burdens of proof. "To prevail on summary judgment,[the defendant is] required to show *either* that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lucent Techs., Inc.*, 642 F.3d at 745 (emphasis added). Defendant has succeeded in showing an absence of evidence to support Plaintiff's prima facie case, and consequently, the Court need not determine whether Defendant provides sufficient evidence of a legitimate, nondiscriminatory reason to terminate Plaintiff's employment. *See also Celotex Corp.*, 477 U.S. at 323-24 (1986) (stating that the moving party bears the initial burden of establishing the absence of a genuine issue of material fact and that burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.").

Under FEHA, it is unlawful "[f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov. Code § 12940(m) (2005) (amended 2011). "Reasonable accommodation may include . . . [j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." Cal. Gov. Code § 12926(o) (2005) (amended 2011). An employer, however, is not required to provide "an accommodation that is demonstrated by the employer . . . to produce undue hardship to its operation." Cal. Gov. Code § 12926(t) (2005) (amended 2011). Indeed, while "a finite leave [of absence] can be a reasonable accommodation . . . provided it is likely that at the end of the leave, the employee would be able to perform his or her duties. . . . Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected . . . ." *Hanson*, 74 Cal. App. 4th at 226-27.

When an employer moves for summary judgment on a claim for failure to reasonably accommodate, it must establish, "through undisputed facts," one of the following: (1) that "reasonable accommodation was offered and refused," (2) that "there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation," or (3) that "the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *Lucent Techs., Inc.*, 642 F.3d at 744 (quoting *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (Ct. App. 2000)). Here, there is no evidence that a reasonable accommodation was offered and refused and the parties dispute whether there was a vacant position at Vitamin World for which Plaintiff was qualified and capable of performing with or without accommodation. Notwithstanding, the undisputed evidence establishes that the informal interactive process

broke down because of Plaintiff's failure to engage in good faith discussions with Defendant. This is sufficient to support summary judgment.

Specifically, the undisputed evidence shows that Vitamin World approved every one of Plaintiff's properly-submitted requests for a leave of absence, including: (1) Plaintiff's ten-week leave of absence from March 23, 2003 to June 2, 2003 as a result of emergency abdominal surgery, which Vitamin World approved and categorized as FMLA Leave, (SUF Nos. 7, 8); (2) Plaintiff's seven-week leave of absence from August 14, 2003 to October 2003 due to an emergency hysterectomy, which Vitamin World approved and categorized as FMLA Leave for the first two weeks and as Extended Disability Leave for the remaining five weeks, (SUF Nos. 9, 10); (3) Plaintiff's twelve-week leave of absence from January 16, 2008 to April 14, 2008 due to kidney problems, which Vitamin World approved and classified as FMLA Leave, (SUF No. 19); and (4) Plaintiff's two-week leave of absence from May 29, 2008 to June 9, 2008 due to further kidney problems, which Vitamin World classified as Extended Disability Leave, (SUF Nos. 20, 21). In each of these cases, the position Plaintiff held prior to her leave of absence was vacant, and consequently, Vitamin World reinstated her to her previously-held position upon her return. (SUF Nos. 13, 20, 49.)

With respect to Plaintiff's final leave of absence from June 25, 2008 to July 10, 2008, which Vitamin World approved and classified as Extended Disability Leave, (SUF Nos. 23, 24), Plaintiff failed to report to work at the conclusion of her leave of absence on July 11, 2008. (SUF No. 22.) Yet, Defendant took no immediate action. In fact, Vitamin World did not fill Plaintiff's position until twenty-five days after her failure to report to work as scheduled, and after continuing its operations in the Temecula store without a Store Manager for more than one month. (SUF No. 25.) Ultimately, Plaintiff was absent, without any communication to Vitamin World, for almost three months after her leave expired and over three months since the last day she worked. (SUF No. 27.)

"It is the responsibility of both sides to keep communications open and neither side has the right to obstruct the process." *Jensen*, 85 Cal. App. 4th at 266. In this respect,

1  Plaintiff utterly fails to explain her failure to communicate with Defendant. While
2  Plaintiff asserts that, as of December 2008, she was willing to accept multiple positions
3  within the Company, she simply ignores the fact that the breakdown in communication
4  occurred long before then – when Plaintiff seemingly disappeared for three months.
5  Essentially, Plaintiff would have Vitamin World grant her unlimited and indefinite leave,
6  absent supporting documentation for that leave, and then reinstate her to her previously-
7  held position or another vacant position within the Company upon Plaintiff's demand.
8  Although Plaintiff's situation is sympathetic, her expectations in this respect ask more of
9  Defendant than is required by law. Indeed, under California law, Vitamin World was not
10 required to allow Plaintiff an indefinite period of leave. *See Lucent Techs., Inc.*, 642 F.3d
11 at 744; *Hanson*, 74 Cal.App.4th at 226 (providing that an employer's duty to reasonably
12 accommodate a disabled employee "does not require the employer to wait indefinitely for
13 an employee's medical condition to be corrected"). Such a requirement would
14 undoubtedly constitute an "undue hardship," as it would create "significant difficulty"
15 for the Company and would potentially impose a "significant expense." *See* Cal. Gov.
16 Code § 12940(t).

17  Ultimately, by virtue of its repeated approvals of Plaintiff's leaves of absences,
18 "[Vitamin World] did everything in its power to find a reasonable accommodation, but
19 the informal interactive process broke down because [Plaintiff] failed to engage in
20 discussions in good faith." *Lucent Techs., Inc.*, 642 F.3d at 744 (quoting *Jensen*, 85 Cal.
21 App. 4th at 263). Thus, as a matter of law, the undisputed evidence cannot support a
22 finding that Vitamin World failed to provide Plaintiff with a reasonable accommodation.
23 Accordingly, summary judgment as to Plaintiff's claim for failure to accommodate is
24 hereby **GRANTED**.

25  **C. PLAINTIFF'S CLAIM FOR FAILURE TO ENGAGE IN THE INTERACTIVE**
26  **PROCESS**

27  Under FEHA, "[i]t is an unlawful employment practice . . . [f]or an employer . . .
28 to fail to engage in a timely, good faith, interactive process with the employee . . . to

determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability." Cal. Gov. Code § 12940(n) (2005) (amended 2011). "[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." *Lucent Techs., Inc.*, 642 F.3d at 742-43 (quoting *Nadaf–Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 984 (Ct. App. 2008)).

As explained above, the undisputed evidence demonstrates that Vitamin World accommodated Plaintiff to the extent she provided appropriate reasons for her leaves of absence. Vitamin World continued to do this and continued to reinstate Plaintiff until Plaintiff's unexplained leave essentially rendered any further accommodation an "undue hardship." Ultimately, it was Plaintiff who failed to "keep communications open" and thereby failed to engage in the interactive process. *Jensen*, 85 Cal. App. 4th at 266. Accordingly, summary judgment as to Plaintiff's claim for failure to engage in the interactive process is hereby **GRANTED**.

### D. PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Under California law, although "an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." *Lucent Techs., Inc.*, 642 F.3d at 748 (quoting *Silo v. CHW Med. Found.*, 27 Cal.4th 1097, 1104 (2002). Nevertheless, "[t]his public policy exception to the at-will employment rule must be based on policies carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." *Id.* at 748-49. To establish a claim for wrongful termination in violation of public policy, Plaintiff must show: (1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination. *Id.* at 749 (citing *Turner v. Anheuser–Busch, Inc.*, 7 Cal. 4th 1238, 1253 (1994). Although

"disability discrimination can form the basis of a common law wrongful discharge claim," *Id.* (citing *City of Moorpark v. Super. Ct.*, 18 Cal. 4th 1143, 1161 (1998)), Plaintiff's claim for disability discrimination, and each of her other claims, have been adjudicated in Defendant's favor. Therefore, Plaintiff cannot prevail on her claim for wrongful termination in violation of public policy and summary judgment is hereby **GRANTED** as to this claim.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the undisputed evidence, viewed in the light most favorable to Plaintiff, shows that there is no genuine issue of material fact as to any of Plaintiff's claims, and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS SO ORDERED.**

November 21, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE